May it please the Court, my name is Antonio Salazar and I'm here representing Maria Velasquez. This case involves eligibility for what is a very important benefit to aliens that are unlawfully in the United States, and that is what is commonly called cancellation of has to establish four elements. First, that they have been living in the United States for more than 10 years, that they have qualifying United States citizen or resident alien relatives, that they are of good moral character, and that those qualifying relatives will suffer a very high level of hardship if the alien is removed from the United States. In this case, Maria Velasquez was pre-termitted from applying for that important benefit because of various rulings by the Immigration Court and then by the Board of Immigration Appeals because in 1999 she was found guilty of Assault 4 under Washington law which is commonly called simple assault. Under the Washington statutory scheme, there are Assault 1, 2, and 3 which are all felonies, Class A, Class B, and Class C, and then Assault 4 is simply defined as an assault that is not an Assault 1, 2, or 3. There's no intent element, there's no element of bodily harm. The case law in the, we have cited in our reply brief, the Washington pattern of jury instruction, it's basically any offensive touching. There's no harm, there's no, nothing beyond that. It's very basic. Touching someone's nose and then finding it offensive would be a simple assault. Justice Breyer, I understand that argument. I have a procedural one I want to ask you. The issue that was cited in the opening brief was a far different issue, and the issue you're arguing now was not cited until the reply brief and was not argued in the opening brief or referred to in the opening brief, even tangentially. We have a rule in our court that we frequently impose that if an argument is not made in the opening brief, it's waived. Not only was it not made, it wasn't referred to at all in the opening brief. So why wouldn't we just consider this argument waived and failure, as a failure to comply with the orders of court in briefing? Your Honor, I inherited this case from the prior attorney that had filed the opening brief. I understand that, but our rule doesn't make exceptions for new lawyers or added lawyers or law firms or how ‑‑ what law school they went to. We just have a rule because we can't adjust that. Was there an effort made to amend the opening brief? No, Your Honor. The matter was just addressed in the reply brief. Only? Only, yes. And how would you argue that we should hear the issue then? Well, Your Honor, I believe that the issue is inherent in the ‑‑ in the BIA decision and below that by the decision of the immigration judge, and that even though it wasn't addressed directly in the opening brief of counsel, she did indirectly address that issue by saying that she felt that the client was eligible for the requested relief of cancellation of removal, which is the central issue in the case. So your argument is that anything that's in the BIA record or the IJ record can be brought up in the reply brief because ‑‑ Well, Your Honor, I guess what I'm saying is to address the court's question that even though counsel didn't directly address that issue, she did address the issue by saying that it was her position, that is, the Petitioner's position, that she was in favor of the cancellation of removal, relief from removal, and ‑‑ but she would focus on a different issue, the law of the case argument, based on an earlier BIA decision that had been made in the same case. You're no longer asserting that issue? I'm not discarding the issue, Your Honor, but I think that the clearer issue is whether she is eligible for the relief. I think it's quite clear, given the same case and the more recent Ortega-Mendez case, that the Washington Assault IV statute does not categorically define a crime of violence as ‑‑ I don't dispute that it's a valid issue to raise. I'm just talking procedurally about whether we can hear it. Okay. Thank you for your response. I appreciate it. Yes. Were there any documents in the record on ‑‑ as to the record of conviction of the fourth degree assault, if we were to go and look at the Taylor modified categorical approach? I don't believe, and I don't know if the government is asserting that a modified approach would be applicable, and this isn't. The only conviction document that I've seen is the Assault IV conviction record, and later there was a modification from the initial sentence of 365 days to 359 days to take the respondent out of being in the position of arguably being an aggravated felon because of the length of the sentence. But our focus is rather on whether or not it's even a crime of violence, which I think that clearly it's not. In line with the Singh case and the Ortega case, it's very similar to the Oregon case and the California Battery case. It's simply an offensive touching, and under 18 U.S.C. Section 16A, it's not a crime of violence. I think it's quite clear now, and I think this presents a good opportunity for the court to make that determination. The other issue, and again, this is a procedural concern, is that the BIA made a decision on a different basis of ineligibility than did the immigration judge. They decided that she was not eligible for this relief because she had committed a crime of moral turpitude, which is... Which the IJ found otherwise, didn't it? The IJ, the immigration judge had found that she was ineligible because she had committed a crime of domestic violence. Right, but didn't the IJ make an affirmative finding or rejection of moral turpitude? He didn't use that as a basis to... In other words, did he say it wasn't moral turpitude, but that it was, or did it simply not make any finding with respect to moral turpitude? I don't believe that he made a finding on the CIMT issue. Within the BIA, that was the basis of their decision. Prior to our meeting today, I was discussing this issue with counsel, and the government in this case is not adverse to a supplemental briefing on that specific issue of whether it is a CIMT, and that is what we're requesting. Whether it is a what? Crime involving moral turpitude. I'm sorry, I'm using... CIMT, is that what it is? Yeah, crime involving moral turpitude. That's commonly how we refer to it in immigration court. Because the case law that exists, I think, clearly supports that it is not a crime involving moral turpitude, and therefore, if it's not a crime of violence and it's not a crime involving moral turpitude, then this woman who has lived here since 1982 and has five United States citizen children would be eligible for this very important form of relief. Unless the Court has other questions, I would reserve my time. Thank you. May it please the Court, good morning, Your Honors. Leslie McKay for the respondent, Alberto Gonzalez. I'd like to begin with the crime of violence issue quickly. It's the government's position that the petitioner in this case was not barred from cancellation due to a finding that she was convicted of a crime of violence or a crime of domestic violence. The immigration judge did make that finding, however, the board's order, which we would submit is the final order of removal, appears to have reviewed the record de novo and did not sustain or did not even discuss that finding, and we would assert at this point that the only issue with respect to her eligibility for cancellation of removal revolves around whether she's been convicted of a crime involving moral turpitude. Do you concede that the crime of the fourth degree is solved under Washington law, it's not a crime of violence, it's defined in 9th? Your Honor, because of the circumstances of this case, because we don't agree that it's an issue in this case, I can't concede that categorically for that crime. I will concede in this case that the board at least implicitly found that this petitioner is not guilty of a crime of domestic violence. Regarding the crime involving moral turpitude issue, the first argument, of course, is that the issue has been waived by petitioner. However, given the substantial equities in this case and given the complexity of this issue, we would assert that at least as far as I've been able to determine that the board's case is defensible under its decision in matter of TRAN and that the key is that there is a domestic violence designation in this particular case and that that is sufficient to bring it within the definition of crime involving moral turpitude. However, there's been no briefing by either side and the government thinks that in the best interest of both parties as well as the court, supplemental briefing might be the way to go. Supplemental briefing would also allow time discussing with counsel this morning. It appears that the petitioner's oldest son has applied for a visa petition for her and that she may have some adjustment eligibility and it would give us some time to investigate that and see where she's at in that process. What about the whole law of the case argument? Your Honor, it's a little odd the way this went down and up and back down in various grounds being asserted and the I.J. saying I'm not going to listen to what the BIA has to say. We do know law of the case does apply to these proceedings. Yes, and we would assert that it doesn't apply in this particular case because the board's initial order remanding wasn't on the crime involving moral turpitude issue. It was on the issue of whether her sentence modification was applicable in immigration proceedings, whether it was effective for immigration purposes and that sentence modification was critical not really to her eligibility for cancellation but to her eligibility for voluntary departure because the immigration judge found that it was an aggravated felony crime of violence which requires a sentence of one year or more. And so that, it was on the BD issue, voluntary departure, the board simply said she's not barred from seeking cancellation. They certainly didn't say she's eligible absolutely for cancellation and there was just no consideration, no discussion of the crime involving moral turpitude issue which they came back later in their second opinion and addressed as I think they have absolutely every right to consider de novo her statutory eligibility for relief. And if there are no further questions, I'm happy to submit. Thank you, counsel. I wouldn't have anything further. Thank you, counsel. All right, Velasquez-Sanchez versus Gonzalez. You're muted.
judges: Wallace, Wardlaw, Fisher